IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:13-HC-2059-FL

| | | |
|---|---|---|
| JONATHAN M. GOULD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| PATSY CHAVIS, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter came before the court on respondent's motion for summary judgment (DE 5) pursuant to Federal Rule of Civil Procedure 56, to which petitioner responded. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants respondent's motion.

## STATEMENT OF CASE

On October 7, 2009, petitioner was convicted following a jury trial in the Onslow County Superior Court of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. State v. Gould, No. COA10–194, 2010 WL 3860595, at *2 (N.C. Ct. App., Oct. 5, 2010). Petitioner was sentenced to consecutive terms of imprisonment of one hundred fifty-seven (157) to one hundred ninety-eight (198) months and fifty-eight (58) to seventy-nine (79) months. (Pet. p. 1.) Petitioner filed a notice of appeal following his conviction. On October 5, 2010, the North Carolina Court of Appeals issued an order finding no error. Gould, 2010 WL 3860595, at *5. On December 15, 2010, the North Carolina Supreme Court denied discretionary review. State v. Gould, 705 S.E.2d 370, 370 (N.C. 2010).

On December 19, 2011, petitioner filed a *pro se* motion for appropriate relief ("MAR") in the Onslow County Superior Court. (Resp't's Mem. Ex. 6.) Petitioner subsequently filed an amendment to his MAR. (Id. Ex. 7.) On November 19, 2012, the superior court denied petitioner's MAR. (Id. Ex. 8.) On January 31, 2013, petitioner filed a *pro se* petition for a writ of certiorari in the court of appeals, which was denied on February 14, 2013. (Id. Exs. 9, 11.)

On March 11, 2013, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, petitioner alleges the following: (1) he was denied a fair trial and the right to due process pursuant to the Fourteenth Amendment to the United States Constitution when his conviction was based solely on statements provided in violation of his rights pursuant to the Fifth Amendment to the United States Constitution; and (2) he received ineffective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution. On April 3, 2013, respondent filed a motion for summary judgment, arguing that petitioner's claims are without merit. The motion was fully briefed.

## STATEMENT OF FACTS

The facts as stated by the North Carolina Court of Appeals are summarized as follows:

> In the early morning hours of 20 December 2008, Onslow County sheriff deputies responded to a panic alarm from the home of Defendant, Jonathan Matthew Gould. At the time, Defendant shared the home with his wife, A.A.[1] Deputies arriving at the scene, knocked on the front door to Defendant's home, and identified themselves as law enforcement officers. After a few moments, Defendant opened the door and allowed the deputies into his home. Upon entering, the deputies noticed A.A. lying on a couch in the living room gasping for air. There also appeared to be large amounts of blood and vomit on A.A. and the area immediately surrounding the

---

[1] A.A. is a pseudonym used throughout the Court of Appeals opinion to protect the victim's identity.

couch. Because of the apparent seriousness of A.A.'s condition, deputies immediately called for paramedics. While waiting for the paramedics, the deputies noticed a knife and two hammers on the living room floor. Paramedics arrived quickly and provided A.A. with medical assistance. Defendant told deputies that he and A.A. were attacked by an unknown male intruder. Defendant was then transported to the hospital to obtain treatment for several minor injuries he sustained as a result of the attack.

Detective Jason Daughtry was dispatched to the hospital where he interviewed Defendant in an attempt to gain more information about the attack. After speaking briefly, Defendant agreed to accompany Detective Daughtry to the Sheriff's office to provide a detailed statement of events. While at the station, Defendant carefully recounted the attack that occurred in his home. However, after reviewing Defendant's statement, Detective Daughtry noticed several inconsistencies in Defendant's story. Detectives conducted another interview to address the inconsistencies in Defendant's account of the events. It was during a subsequent interview that Defendant explained that when he returned home from work he saw A.A. sleeping on the couch in the living room. Upset about a series of arguments they had, Defendant struck A.A. in the head with a hammer while she slept.

Detective Daughtry recited Defendant's Miranda rights, which Defendant promptly waived and again confessed to striking A.A. with a hammer. Thereafter, Defendant agreed to provide the detectives with a written statement of the events. Defendant also explained to the detectives that he used a knife in the home to injure himself and fabricated the story about an unknown intruder. A.A. suffered a severely fractured skull as a result of Defendant's attack. Despite several surgeries to repair her skull and limit damage to the brain, A.A. is expected to suffer from long-term mental deficits as a result of her injuries. Detectives also learned that A.A. was pregnant at the time of the attack.

On 5 May 2009, Defendant was indicted for the offenses of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious bodily injury. At trial, Defendant maintained that he and his wife were attacked by an unknown intruder. Defendant explained that he only provided deputies with a confession because "it was obvious to me that they didn't think that anything

3

was true. So, by that time, I got sick of listening to it. I told them what they wanted to hear." Following the trial, jurors convicted Defendant of the offenses for which he was indicted.

Gould, 2010 WL 3860595, at *1-2.

## DISCUSSION

A.    Summary Judgment

1.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A

4

state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. <u>Williams v. Taylor</u>, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." <u>Id.</u> at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. <u>Id.</u> The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

<u>Bell v. Jarvis</u>, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1).

    2.    Analysis

    a.    Fair Trial/Due Process

Petitioner argues that he was denied a fair trial and the right to due process pursuant to the Fourteenth Amendment to the United States Constitution because his conviction was based solely

5

on inadmissible statements provided in violation of his Fifth Amendment privileges against self-

incrimination. In support, petitioner contends that the inculpatory statements he made at the police

station on December 20, 2008, both prior and subsequent to being read his rights pursuant to

Miranda v. Arizona, 384 U.S. 436 (1966), should have been excluded at trial because the

circumstances surrounding his questioning at the police station lead to a coerced confession.

Petitioner raised this claim in his MAR. The MAR court adjudicated the claim, in the context of an

ineffective assistance of counsel claim, and found it meritless. Specifically, the MAR court provided

the following analysis:

> 8.    Much of the defendant's argument is addressed to his
> contention that his counsel failed to move to suppress certain
> inculpatory statements made by the defendant. The testimony
> in the present case was that the defendant voluntarily went to
> the Sheriff's Office at the request of Detective Daughtry. T.p.
> 436. He was not in handcuffs. T.p. 438. The investigator
> offered to provide the defendant with any necessities such as
> water. T.p. 440. The defendant was asked to provide a
> voluntary statement concerning the events leading to the
> assault of his wife. The defendant provided the requested
> statement. The defendant was interviewed further and
> eventually recanted his earlier exculpatory statement and
> made inculpatory statements; at which time he was advised of
> his Miranda rights. T.p. 458. The defendant waived these
> rights and subsequently provided additional details of the
> incident that were inculpatory.
>
> 9.    In Williams v. State, 89 So.3d 676 (Miss. Ct. App. 2012) the
> defendant alleged that his counsel was deficient for failing to
> move to suppress an inculpatory statement made by the
> defendant despite the fact that the defendant was properly
> advised of his Miranda rights. The Mississippi Court of
> Appeals noted that "based on the record before us, 'it is
> difficult to see how the [circuit] court, given the proper
> standard of review, would have excluded the statements.' "
> Id. at 681. The Mississippi Court of Appeals noted that in a
> similar case, Davis v. State, 743 So.2d 326, 336 (Miss. 1999),
> the Mississippi Supreme Court refused to find ineffective

6

assistance of counsel where counsel failed to file a motion to suppress the defendant's police statements because "it does not appear that counsel should be required to file frivolous motions." <u>Id.</u>

10. Similarly in the present case, in view of the fact that had the defendant filed a motion to suppress his statement, it is clear beyond a reasonable doubt that the trial court, applying the proper standard of review, would have denied the defendant's motion to exclude the statements. The interview of the defendant began as a consensual interview conducted by Detective Daughtry. The defendant was then interviewed by another investigator Frank Terwilliger. Prior to Terwilliger asking the defendant questions, the defendant was advised of his <u>Miranda</u> rights. The defendant admitted to this on the witness stand. T.p. 789. The defendant made inculpatory statements to Detective Terwilliger after being advised of his <u>Miranda</u> rights. The defendant also testified that he made inculpatory statements voluntarily. T.p. 789-791. Based on the defendant's own testimony, a motion to suppress his statements would have been frivolous and therefore unnecessary.

Resp't's Mem. Ex. 8.

Section 2254(d) "requires federal habeas courts to ascertain whether the underlying state court adjudication of a claim on the merits 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established' Supreme Court precedent. <u>Bell</u>, 236 F.3d at 160 (citing 28 U.S.C. § 2254(d)). Although the state court in this action analyzed petitioner's claim in terms of state law, this does not mean that the state court's decision was contrary to established federal law. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002). Rather, a state court does not need to cite Supreme Court precedents "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Id.</u> Nor is a federal habeas court required to "offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the defendant's constitutional rights were violated during the state court proceedings." <u>Bell</u>, 236

7

F.3d at 160.  Here, the MAR court completed a detailed and thorough analysis of petitioner's claim, and, as set forth below, the MAR court's reasoning was not contrary to clearly established federal law.

A suspect may waive his <u>Miranda</u> rights after receiving the required warnings "provided the waiver is made voluntarily, knowingly, and intelligently.  <u>Miranda</u>, 384 U.S. at 444; <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986) (stating that for a waiver of <u>Miranda</u> rights to be valid, it must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.").  The Fifth Amendment prohibits a police officer from coercing a defendant into making an involuntary statement.  <u>United States v. Braxton</u>, 112 F.3d 777, 780 (4th Cir. 1997), <u>cert. denied</u>, 522 U.S. 874 (1997).  A coerced confession claim requires that the court look to the "totality of the circumstances" in determining whether the individual was unduly influenced and whether the confession was voluntary.  <u>United States v. Pelton</u>, 835 F.2d 1067,  1071 (1987).  Prior to arrest, <u>Miranda</u> warnings are applicable only "where there has been such a restriction on a person's freedom as to render him 'in custody.'"  <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977) (stating "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime.")  The test for determining whether a statement is involuntary under the Due Process Clause "is whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired."  <u>Braxton</u>, 112 F. 3d at 783.  Relevant factors for the Court's consideration include the defendant's age, education, level of

intelligence, the duration of questioning, the use of physical coercion or deprivation, the defendant's experience with the criminal justice system, and whether the defendant has been advised of his Miranda rights. See United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008); Correll v. Thompson, 63 F.3d 1279, 1288 (4th Cir.1995).

The record in this case reflects that Detective Daughtry asked petitioner to go to the sheriff's office for a more in-depth interview, and petitioner agreed. (Tr. pp. 438, 786.) The record further reflects that petitioner was not in handcuffs. (Id. p. 438.) Upon arriving at the sheriff's office, Detective Daughtry placed petitioner in an interview room and offered him water or a coke. (Id. p. 440.) The detective asked petitioner to write a voluntary detailed statement about what happened on the evening of December 20, 2008, and petitioner complied. (Id. p. 441.) The detective noted inconsistencies in petitioner' statement, and asked petitioner to participate in a secondary interview and informed petitioner that it would be a while before the second officer arrived. (Id. pp. 449, 451, 786.) Detective Daughtry then set up some chairs, petitioner laid on the chairs, and was left alone until Detective Terwilliger arrived. (Id. p. 787.) After Detective Terwilliger began the second interview, he asked petitioner several times if petitioner hit his wife on the head, petitioner stated "I guess," and Detective Terwilliger advised petitioner of his Miranda rights. (Id. p. 789-790.) Petitioner testified at trial that he made inculpatory statements to Detective Daughtry "[b]ecause [he] was fed up with the questions." (Id. p. 794.) Petitioner further testified that "even though [he] knew [his] rights and [he] knew what [he] could and couldn't do, [he] wasn't thinking." (Id.) Detective Daughtry advised petitioner of his Miranda rights a second time and asked petitioner to write another statement. (Id. pp. 796-797.) Petitioner complied. (Id.) Petitioner

admitted, at trial, that he made the inculpatory statement on his own volition, and that no one forced him to write the statement.  (Id. p. 802, 808.)

Although petitioner states that his confession was coerced because he was in a locked room in the police station, he spent fifteen (15) minutes attempting to get an officer's attention so that he could use the bathroom, he had been awake for thirty-one (31) hours, and he had not been taking his prescribed pain medications for his injuries, applying the totality of the circumstances analysis, the court finds that these facts are insufficient to establish coercion.  For instance, the record reflects that petitioner initially was questioned by Detective Daughtry and that Detective Daughtry made efforts to make petitioner comfortable.  (Resp't's Mem. Ex. 8.)  Further, petitioner testified, at trial, that he voluntarily made the inculpatory statements at issue after being advised of his Miranda rights.  (TR. p. 802.)  Petitioner also admitted that he knew about his Miranda rights and that he did not have to talk prior to being questioned.  (Id. p. 790).  Finally, there is no evidence to suggest that petitioner requested his pain medication.  Accordingly, under a totality of the circumstances analysis, the court finds that the record reflects that petitioner understood the circumstances under which he was questioned,  and there is no evidence to suggest that petitioner's will was overborne or that his capacity for self-determination was critically impaired.  See Oregon v. Elstad, 470 U.S. 298, 309 (1985) ("Though Miranda requires that the un-warned admission must be suppressed, the admissibility of any subsequent [warned] statement should turn . . . solely on whether it is knowingly and voluntarily made."); cf., Greenwald v. Wisconsin, 390 U.S. 519 (1968) (confession involuntary where defendant was interrogated for over 18 hours without food, sleep, or necessary medication); Beecher v. Alabama, 389 U.S. 35 (1967) (confession coerced where police held a gun to defendant's head and interrogated him while he was in the hospital and under the influence of morphine); Payne

10

v. Arkansas, 356 U.S. 560 (1958) (confession coerced where defendant was held incommunicado for three days with limited food and threatened with attack from a lynch mob). Additionally, there is no evidence that petitioner requested counsel or requested that the questioning stop. See McNeil v. Wisconsin, 501 U.S. 171, 178 (1991) (to properly assert a right to consult with an attorney during custodial interrogation, an individual must, "at a minimum, [make] some statement that can reasonably be construed as an expression of a desire for the assistance of an attorney in dealing with custodial interrogations by the police.").

The court next addresses petitioner's contention that the Onslow County law enforcement officers used an improper two-step "question-first, warn later" interrogation procedure discussed in Missouri v. Seibert, 542 U.S. 600 (2004), rendering both the pre and post Miranda statements inadmissible. The "underlying assumption" to this method of interrogation, the Court noted, was that "with one confession in hand before the warnings, the interrogator can count on getting its duplicate. Id. at 613. Inserting Miranda rights "in the midst of coordinated and continuing interrogation" would likely "mislead and deprive a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." Id. at 613-14. The Court listed relevant facts bearing on whether midstream Miranda warning was effective, including the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the two statements, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuos with the first. Id. at 615-616. Because the decision was a plurality, the Fourth Circuit also follows Justice Kennedy's concurring opinion, which only applies Seibert when

11

"the deliberate 'question-first' strategy is employed." <u>United States v. Mashburn</u>, 406 F.3d 303, 309 (4th Cir. 2005).

In the instant action, there is no evidence to establish that the Onslow County officers deliberately employed a "question-first" strategy in an attempt to obtain defendant's confessional statements. While the timing, setting, and officers remained the same, the officers took a short break in questioning after petitioner made the pre-<u>Miranda</u> inculpatory statements prior to reading petitioner his <u>Miranda</u> rights and proceeding with the interview. Additionally, the record reflects that Detective Daughtry read petitioner his <u>Miranda</u> rights, whereas Detective Terwilliger was the officer who conducted the interview leading to the inculpatory statements. (Tr. p. 458.) Moreover, as stated, petitioner admits that he was aware of his <u>Miranda</u> rights prior to be instructed of his rights, and that he made the inculpatory statements voluntarily. Finally, petitioner has not presented any evidence that the law enforcement officers put forth a contrived effort to undermine <u>Miranda</u>. Thus, petitioner is not entitled to relief on this claim.

Based upon the foregoing, the MAR court's adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. <u>See</u> 28 U.S.C. § 2254(d)-(e). Therefore, respondent is entitled to summary judgment for this claim.

b. Ineffective Assistance of Counsel

The court next addresses petitioner's contention that he received ineffective assistance of trial counsel. The Sixth Amendment right to counsel includes the right to the effective assistance

12

of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish a two-prong test. First, a petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. <u>Id.</u> This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." <u>Id.</u> at 689. Petitioner must overcome "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance" and establish "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [him] by the Sixth Amendment." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 787 (2011). For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. Even then, however, habeas relief may be granted under <u>Strickland</u> only if the "result of the proceeding was fundamentally unfair or unreliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993); <u>Sexton v. French</u>, 163 F.3d 874, 882 (1998).

Petitioner alleges that he received ineffective assistance of counsel because "counsel[']s performance both before trial, during the vital stages of preparation and during trial itself fell below an acceptable standard, becoming inadequate and for all intensive(sic) purposes ineffective in the assistance provided . . . ." (Mem. in Supp. of Pet. ¶ 13(A).) The MAR court adjudicated these claim and denied it on the merits. <u>Id.</u> The MAR court reasoned as follows:

> 3.    Following the defendant's conviction, the defendant filed a motion for appropriate relief. In his first argument, the defendant claims that he was denied the right to effective assistance of counsel. Defendant acknowledged that counsel's assistance was "mostly

acceptable." However, he alleged that counsel's assistance [was] ineffective in the following areas:

1) Defendant's counsel should have filed a motion for exculpatory evidence.

2) Defendant's counsel failed to obtain the testimony from the defendants witnesses, which could actually have strengthened the defense, ie: Defendant's family, etc.

3) Defendant's counsel failed to investigate the facts of moving for suppression failing to raise or properly mitigate and litigate the claim.

4) Defendant's counsel waived preliminary hearing without consulting with defendant.

5) Defendant's counsel failed to conduct <u>Miranda</u> hearing-exclusionary hearing and failed to take depositions of interrogations from co-defendant-primarily from victim.

6) Defendant's counsel did not file a motion to suppress indictment when the indictment is defective (jurisdictional error).

7) Defendant's counsel failed to appeal in timely manner to defendant's conviction.

8) Defendant's counsel failed to inform the defendant to his right to Appeal pursuant to the N.C. General Statutes. . . .

5. Clearly counsel for the defendant did not make errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Some of defendant's assertions are easily disproven by the record. For instance, in the file maintained by the Clerk of Superior Court for the above captioned case is a request for discovery filed by trial counsel in February of 2009, which contradicts the defendant's allegation that Defendant's counsel did not file a motion for exculpatory evidence. That record also does not show where counsel waived the defendant's right to a probable cause hearing. Without a doubt, the North Carolina Court of Appeals heard the defendant's appeal. Yet, the defendant claims his

14

counsel failed to appeal in a timely manner to defendant's conviction.

6. Other claims made by the defendant have no factual support. For instance, the defendant alleged that his "counsel did not file a motion to suppress indictment when the indictment is defective (jurisdictional error)." Yet his pleadings do not allege how the indictment is defective. The court has reviewed the indictments, and they are not defective.

7. Furthermore, none of the errors that the defendant alleged were committed by this counsel were so serious as to deprive the defendant of a fair trail, a trial whose results are reliable. Defendant claimed his counsel "failed to obtain the testimony from the defendants witnesses, which could actually have strengthened the defense, ie: Defendants family, etc." He expounded on this argument by alleging that counsel should have reached out to his former wife, the victim in this case to secure her testimony. From a review of the transcript, it is clear that the victim had no memory of her attack due to the severe brain injuries that she suffered as a result of this crime. Since she has no memory of the attack, her testimony would not have exonerated the defendant.

8. Much of the defendant's argument is addressed to his contention that his counsel failed to move to suppress certain inculpatory statements made by the defendant. The testimony in the present case was that the defendant voluntarily went to the Sheriff's Office at the request of Detective Daughtry. T.p. 436. He was not in handcuffs. T.p. 438. The investigator offered to provide the defendant with any necessities such as water. T.p. 440. The defendant was asked to provide a voluntary statement concerning the events leading to the assault on his wife. The defendant provided the requested statement. The defendant was interviewed further and eventually recanted his earlier exculpatory statement and made inculpatory statements; at which time he was advised of his <u>Miranda</u> rights. T.p. 458. The defendant waived these rights and subsequently provided additional details of the incident that were inculpatory.

15

9.      In <u>Williams v. State</u>, 89 So.3d 676 (Miss. Ct. App. 2012) the defendant alleged that his counsel was deficient for failing to move to suppress an inculpatory statement made by the defendant despite the fact that the defendant was properly advised of his <u>Miranda</u> rights. The Mississippi Court of Appeals noted that "based on the record before us, 'it is difficult to see how the [circuit] court, given the proper standard of review, would have excluded the statements.' " <u>Id.</u> at 681. The Mississippi Court of Appeals noted that in a similar case, <u>Davis v. State</u>, 743 So.2d 326, 336 (Miss. 1999), the Mississippi Supreme Court refused to find ineffective assistance of counsel where counsel failed to file a motion to suppress the defendant's police statements because "it does not appear that counsel should be required to file frivolous motions." <u>Id.</u>

10.     Similarly in the present case, in view of the fact that had the defendant filed a motion to suppress his statement, it is clear beyond a reasonable doubt that the trial court, applying the proper standard of review, would have denied the defendant's motion to exclude the statements. The interview of the defendant began as a consensual interview conducted by Detective Daughtry. The defendant was then interviewed by another investigator Frank Terwilliger. Prior to Terwilliger asking the defendant questions, the defendant was advised of his <u>Miranda</u> rights. The defendant admitted to this on the witness stand. T.p. 789. The defendant made inculpatory statements to Detective Terwilliger after being advised of his <u>Miranda</u> rights. The defendant also testified that he made inculpatory statements voluntarily. T.p. 789-791. Based on the defendant's own testimony, a motion to suppress his statements would have been frivolous and therefore unnecessary.

11.     Defendant alleged that his counsel was ineffective because counsel did not object to Detective Jason Daughtry's testimony about various statements the defendant made because, according to the defendant, these statements were hearsay. Pursuant to G.S. 8C-1, Rule 801(d) statements of the defendant are admissible against the defendant.

16

12. Defendant alleged that his counsel was ineffective because according to the defendant, the defendant's brother found a cell phone in the yard adjacent to the defendant's residence. Thereafter, the defendant's brother provided the phone to counsel who did nothing to further investigate the owner of the phone. The defendant provided no affidavit from his brother to verify this allegation. Further, this allegation is so lacking in detail as to make it impossible for the court to determine the evidentiary value of this piece of evidence. For instance, there is no information about where the phone was located in relation to any other houses or the condition of the phone when it was discovered. The court is personally familiar with counsel. Counsel has been practicing for over forty years and has an impeccable reputation as a zealous advocate for his clients. Counsel has been involved in many major trials in both criminal and civil court. Counsel is on the list of attorneys from Onslow approved by IDS to represent capital defendants. The court finds that the defendant's allegation that counsel simply did nothing with potentially exculpatory evidence is not credible.

Resp.'s Mem. Ex. 8.

Petitioner, in the instant habeas petition, divides his more general ineffective assistance of trial counsel claim into the following claims: (1) counsel failed to contact the victim or the victim's mother; (2) counsel failed to file a motion to suppress; (3) counsel failed to contact potential witness Heather Jones; (4) counsel failed to investigate a cellular telephone found by petitioner's brother in petitioner's backyard; (5) counsel failed to object to the use of pre-Miranda statements at trial; and (6) counsel failed to object to leading questions from prosecution to petitioner when it was a clear attempt at suborning perjury.

As found by the MAR court, the record reflects that petitioner's counsel conducted discovery in this action and pursued exculpatory evidence. Further, petitioner failed to present any evidence

that any alleged exculpatory evidence, including the four minute security video and the fact that the victim's wedding rings have been missing since the date of the offense, would have changed the outcome of the trial. See Hill v.Lockhart, 474 U.S. 52,59-60 (1985). Rather, petitioner primarily relies upon conclusory allegations, which are insufficient to support this claim. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogated on other grounds recognized by Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999) ("In order to obtain an evidentiary hearing . . . a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.") Thus, there is no evidence that counsel acted unreasonably with respect to discovery.

As for petitioner's contention that his counsel should have contacted his former wife and mother-in-law, the record also reflects that petitioner's former wife had no memory of the December 20, 2008, events. Further, petitioner has not provided any evidentiary support for his conclusory contention that his counsel was ineffective for failing to contact his mother-in-law. Nickerson, 971 F.2d at 1136. Thus, counsel did not act unreasonably by not pursuing her as a witness.

To the extent petitioner contends that his counsel should have investigated additional witnesses, petitioner fails to present evidence to establish that counsel failed to investigate any crucial or alibi witnesses. Further, petitioner does not present evidence indicating that any witness was available and willing to testify at trial. See United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (finding that when a petitioner faults counsel for not calling a witness, the petitioner should provide concrete evidence of what the witness would have testified to in exculpation.) (quotations and citation omitted); Nickerson, 971 F.2d at 1136; Hamilton v. Arthur, No. 7:06CV00682, 2007 WL 1795690, at *8 (W.D. Va. June 21, 2007) ("Courts cannot find an attorney ineffective for failing

to call a witness when the only evidence of that witness's potential testimony is the Petitioner's conclusory statements."), appeal dismissed, 272 F. App'x 245 (4th Cir. 2008). Similarly, petitioner has not provided sufficient evidentiary support for his claim that counsel was ineffective because he failed to investigate the cell phone found in petitioner's yard. See id.

Finally, petitioner argues that his trial counsel was ineffective because he failed to impeach Detective Daughtry's "false and highly inflammatory statements" regarding petitioner's pre-Miranda testimony. Petitioner, however, has not provided any evidentiary support for this claim. See Nickerson, 971 F.2d at 1136. Further, petitioner testified at trial and had the opportunity to correct any mis-characterization of his statements.

Based upon the foregoing, the court finds that petitioner has not established that his counsel acted unreasonably. Petitioner, additionally, has not established that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. Accordingly, the MAR court's adjudication of this ineffective assistance of counsel claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Therefore, respondent is entitled to summary judgment for petitioner's first ineffective assistance of counsel claim.

B.      Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

20

**CONCLUSION**

For the foregoing reasons, respondent's motion for summary judgment (DE 5) is GRANTED. The Certificate of Appealability is DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 20th day of March, 2014.

LOUISE W. FLANAGAN
United States District Judge